United States District Court
Southern District of Texas
**ENTERED**
August 12, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMES HERBERT ABNEY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-121 |
| | § | |
| PHILIP SIFUENTES, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## <u>TO DISMISS CASE</u>

Plaintiff James Herbert Abney is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, the undersigned recommends Plaintiff's complaint be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the reasons set forth below. The undersigned recommends further that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID).   Plaintiff was convicted in Harris County for attempted murder and murder and was sentenced on January 30, 1997 to two life sentences.   Plaintiff's claims in this lawsuit occurred in connection with his current assignment to the McConnell Unit in Beeville, Texas and previous assignments to other TDCJ units.

On April 26, 2019, Plaintiff filed his original complaint against the following prison officials: (1) McConnell Unit Warden Philip Sifuentes; (2) McConnell Unit Major Cody Schur; (3) McConnell Unit Captain Cody Wolfrum; and (4) Ms. Mumford, Law Library Supervisor at the Clemens Unit.   Plaintiff sues Defendants in both their individual and official capacities.   Plaintiff's claims arise in connection with his allegations of ongoing retaliation, harassment, tampering with his mail, false disciplinary cases, and the loss and taking of his personal property.  He seeks injunctive and monetary relief.

A *Spears*[2] hearing was conducted on May 31, 2019.   The following representations were made either at the *Spears* hearing or in Plaintiff's original complaint (D.E. 1):  Plaintiff states: (1) from April 2014 through April 2016, he was housed at the Clemens Unit in Brazoria, Texas; and (2) from May 2017 through February 18, 2018, he was housed at the Estelle Unit in Huntsville, Texas.  On February 21, 2018, Plaintiff was transferred from the Estelle Unit to the McConnell Unit.  Plaintiff indicates he has filed over twenty grievances in connection with the allegations raised in his complaint and at the *Spears* hearing.

While Plaintiff was housed at the Clemens Unit, Defendant Sifuentes worked there as the assistant warden.  In October 2014, a property officer went into Plaintiff's locker in his cubicle and packed up all of Plaintiff's belongings.  Another official informed Plaintiff that the property officer had possession of Plaintiff's property.  Defendant Sifuentes subsequently asked Plaintiff to write down everything that was missing.

On December 3, 2014, Defendant Mumford asked for the keys to Plaintiff's locker and searched Plaintiff's cubicle area.  Plaintiff later met with Defendant Sifuentes to complain about the search of his cubicle.  Defendant Sifuentes informed Plaintiff: (1) his family had been calling about his missing property from two months ago; (2) Plaintiff was not in compliance with prison policy regarding what he may possess in his cell; and (3) Defendant Sifuentes was bringing a disciplinary case against Plaintiff.  The next day, Defendant Wolfrum asked Plaintiff if he wanted to appear in connection with his

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

disciplinary case.   Plaintiff indicated he would appear to defend himself.   Defendant Schur was the disciplinary hearing officer and found Plaintiff guilty of the charged violations.

Plaintiff alleges that on December 7, 2014, Warden Smith at the Clemens Unit informed Plaintiff that he was the victim of retaliation.   Plaintiff followed the warden's instructions and filed a grievance.   Defendant Sifuentes responded to Plaintiff's Step 1 grievance, finding that TDCJ officials had located several items in Plaintiff's cubicle which violated prison policy.   Plaintiff testified at the Spears hearing that his disciplinary conviction and punishments were eventually overturned by Warden Smith.

Plaintiff further testified his lost or taken personal property was never returned. Plaintiff's sister filed an ombudsman complaint, but the complaint did not result in the matter being resolved.   Plaintiff did not file a state court civil action with regard to the lost or taken property.

In 2015, Plaintiff took part in a religious retreat program called "Kairos" at the Clemens Unit.   Plaintiff indicated he was both a member of the program and also a graduate.   During one meeting, Defendant Sifuentes walked in to speak with the chaplain. The chaplain then informed Plaintiff he had been kicked out of the program for that day. Plaintiff left the meeting.   Plaintiff's sister filed a second ombudsman complaint regarding Plaintiff's forced departure on that one occasion.   Plaintiff subsequently was allowed to return to the Kairos  program.

Plaintiff further complained Defendant Schur had harassed him in 2015 by bringing a case against him for being out of place.   According to Plaintiff, he was merely

attempting to place an emergency phone call to his sister at the direction of the chaplain. Plaintiff's disciplinary case, however, was dismissed following an investigation into the matter.

During Plaintiff's subsequent assignment to the Estelle Unit, Plaintiff again encountered Defendant Schur.  On September 21, 2017, while on lockdown at the Estelle Unit, Plaintiff returned to his cell to discover his personal property all over the floor. Plaintiff learned from another officer Defendant Schur had been searching through Plaintiff's property. That officer told Plaintiff he was instructed to confiscate Plaintiff's property.   Plaintiff discovered a stack of pictures was missing.   Defendant Schur reportedly told Plaintiff he was taking the pictures.  Plaintiff filed a grievance to which he never was given a response.  Plaintiff did not file a state court civil action with regard to the pictures confiscated from him.  Plaintiff's pictures have not been returned to him.

Plaintiff arrived at the McConnell Unit on February 21, 2018.  Plaintiff's custody level was G5, which means he is required to be escorted in handcuffs whenever he leaves his cell.  Sometime after his arrival to the McConnel Unit, Plaintiff was stopped on the way to his housing assignment by Defendant Sifuentes, who reportedly warned Plaintiff what happened in the other units would not "fly" here.  Plaintiff was placed in a holding cell and provided with a lunch meal.  Defendant Wolfrum also reportedly told  Plaintiff "they" were aware of him and "they" were not going to put up with any problems from Plaintiff.   According to Plaintiff, Defendants Sifuentes and Wolfrum had received a phone call a week or so earlier concerning Plaintiff's imminent arrival at the McConnell Unit.

After receiving warnings from Defendants Sifuentes and Wolfrum, Plaintiff indicated he began receiving his personal mail several weeks late and, in some cases, not at all.  Plaintiff believes some of his legal mail is not reaching its intended destination. Plaintiff has filed two grievances, but his concerns have not been addressed.  He believes Defendant Sifuentes is responsible for these mail issues.  Other than this civil rights case, Plaintiff has no other civil rights or habeas cases pending.   Plaintiff testified, however, he is involved in a divorce proceeding but that his sister has not received some of his legal mail related to that proceeding.

Plaintiff also complained he had not received copies of certain papers documenting the confiscation of his property despite having made appropriate requests and having waited several months.  Plaintiff eventually received a response indicating there were no copies available.  Plaintiff has also sought copies of his disciplinary cases but to no avail.

On January 28, 2019, Plaintiff was scheduled to appear before a Unit Classification Committee (UCC) where he was supposed to receive a favorable line classification.   Instead, Defendant Sifuentes stopped the meeting due to a pending disciplinary case against Plaintiff on the charge of improperly using a phone.   Plaintiff, however, never received such a disciplinary case.   Plaintiff filed a grievance on this matter.  Plaintiff subsequently received his classification meeting on February 4, 2019, where he received his requested line classification.

## III.    LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).   A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable.   *Id*.; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).   The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.   *Twombly*, 550 U.S. at 555.   As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.   *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.   *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).   To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).   A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.   DISCUSSION

### A.   Eleventh Amendment Immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office.   *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).   The Eleventh Amendment, however, bars claims for money damages against a state or state agency.   *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).   As

such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff sues each Defendant in his or her official capacity for money damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

### B.    Statute of Limitations (Clemens Unit Claims)

Plaintiff states he was housed at the Clemens Unit from April 2014 through April 2016. He claims Defendants violated his rights in various incidents occurring in 2014 and 2015. Specifically, Plaintiff alleges: (1) certain personal property taken from Plaintiff's cell in October 2014 became lost; (2) on December 3, 2014, Defendant Mumford improperly searched Plaintiff's cell; (3) Defendant Sifuentes brought a retaliatory disciplinary case against Plaintiff for having improper items in his cell; (4) the disciplinary case was eventually overturned by Clemens Warden Smith; (5) in 2015, Defendant Sifuentes kicked Plaintiff out of a religious program called "Kairos" on one occasion; (6) Defendant Schur in 2015 harassed Plaintiff by filing a disciplinary case

against Plaintiff for being out of place; and (7) the disciplinary case was dismissed following an investigation.

In examining Plaintiff's claims arising from his stay at the Clemens Unit, it is necessary to consider whether they are barred by the running of the applicable statute of limitations. Federal civil rights actions instituted in Texas, such as those brought pursuant to § 1983, are deemed analogous to personal injury claims, and, therefore, the applicable limitations period is the two years fixed by Tex. Civ. Prac. & Rem. Code § 16.003(a). *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). Accrual of a § 1983 claim is governed by federal law. *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002). A cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations. *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999).

Plaintiff filed this civil rights action on April 26, 2019, more than three years after the events occurred in the Clemens Unit. Because Plaintiff's claims at that unit accrued in 2014 and 2015, they are time barred pursuant to the running of the applicable two-year statute of limitations.

Plaintiff appears to argue, however, that the incidents occurring at the Clemens Unit are a part of a continuous stream of harassment and retaliation undertaken by several defendants in this case. Plaintiff's allegations indicate Defendant Schur was present at

Plaintiff's housing assignments at the Estelle and McConnell Units and that Defendants Sifuentes and Wolfrum were present at the McConnell Unit.

The timeliness of Plaintiff's claims arising at the Clemens Unit depends on whether Plaintiff can avail himself of the continuing violation doctrine. This doctrine is equitable in nature and relieves a plaintiff of establishing that all of the challenged conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls into the limitations period." *Davis v. Foxworth*, No. 6:14cv996, 2016 WL 6436668, *5 (E.D. Tex. Nov. 1, 2016). The continuing violations doctrine extends the limitations period for "otherwise time-barred claims only when the unlawful practice manifests itself over time rather than in a series of discrete acts." *Id.* (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004)).

With regard to the continuing violations doctrine in the context of employment discrimination cases, the Supreme Court distinguishes between discrete acts that form the basis of traditional discrimination claims from continuing conduct that forms the basis of hostile work environment claims. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115-17 (2002). Claims alleging discrete acts are not subject to the continuing violation doctrine. *Heath v. Board of Supervisors for Southern University and Agricultural and Mechanical College*, 850 F.3d 731, 737 (5th Cir. 2017). Conversely, hostile environment claims are subject this doctrine because they involve repeated conduct, which means that the "unlawful employment practice" cannot be said to occur on any particular day. *Morgan*, 536 U.S. at 115–17.

"Thus, claims based on discrete acts are timely only when such acts occurred within the limitations period, and claims based on hostile environment are only timely where at least one act occurred during the limitations period." *Davis*, 2016 WL 6436668 at *5 (citing *Morgan*, 536 U.S. at 113). In other words, as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*

The Fifth Circuit Court of Appeals recognizes that the continuing violation doctrine applies the same to Title VII hostile work environment claims as it does to such claims brought under section 1983." *Heath*, 850 F.3d at 739. However, the Fifth Circuit further explained that *Morgan*'s "distinction between 'continuing violations' and 'discrete acts' is not an artifact of Title VII, but is rather a generic feature of federal employment law." *Heath*, 850 F.3d at 740 (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d. Cir. 2006)). In *Heath*, the Fifth Circuit further explained that, unlike a hostile environment claim, a retaliation claim based on discrete acts cannot rely on a continuing violation theory. *Heath*, 850 F.3d 741.

In this case, Plaintiff's alleges several of the same defendants have violated his rights at the Clemens Unit, the Estelle Unit, and the McConnell Unit. Plaintiff's allegations consist of acts of retaliation, harassment, tampering with his mail, filing of false disciplinary cases, and the loss and taking of personal property.

Rather than occurring frequently over a five-year period of time, Plaintiff's allegations indicate that each of the Defendants' actions were sporadic at best. Defendants' sporadic actions over this lengthy period of time in three different prison

settings are best described as discrete acts as opposed to creating a hostile environment for Plaintiff.  The undersigned has found no reported case within the Fifth Circuit to hold that the type of actions described by Plaintiff are consistent with a hostile environment in a prisoner civil rights action which are sufficient to trigger the continuing violation doctrine.  *See Davis*, 2016 WL 6436668 at *5.  Because the continuing violation doctrine has not been triggered, it is respectfully recommended that Plaintiff's claims arising out of incidents at the Clemens Unit be dismissed with prejudice as barred by the applicable two-year statute of limitations.

### C.    Personal Property (Due Process)

Plaintiff claims that, during his incarceration at the Estelle Unit, Defendant Schur searched through Plaintiff's property in his cell and confiscated a stack of pictures. According to Plaintiff, these pictures have never been returned to him.

The Fourteenth Amendment of the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV § 1.   The Supreme Court has held that a random and unauthorized intentional deprivation of property does not violate the Due Process Clause if the State provides an adequate post-deprivation remedy.  *See Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).  A claimant must either take advantage of the available remedies or show that the available remedies are inadequate.  *Hudson*, 468 U.S. at 534-35.

Texas law provides Plaintiff with possible post-deprivation remedies. Texas law allows recovery of monetary damages for the loss of property that has been taken without

authorization. *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (in Texas, the tort of conversion fulfills this requirement); *see also Beam v. Voss*, 568 S.W.2d 413, 420-21 (Tex. Civ. App.– San Antonio 1978, no writ) (conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights). In addition, state law specifically provides that inmates may recover up to $500.00 on a claim that the TDCJ lost or damaged personal property. *See* Tex. Gov't Code § 501.007.

Because Texas law provides an adequate post-deprivation remedy, the confiscation and/or loss of Plaintiff's personal property does not state a violation of the Due Process Clause. *See Hudson*, 468 U.S. at 536 (noting that, even when a prisoner's property was intentionally destroyed, such destruction did not violate the Fourteenth Amendment because state law provided the prisoner with an adequate post-deprivation remedy). A prisoner-plaintiff may bring suit in federal court for property loss only if relief is denied in state court on grounds other than the merits of his claim. *See Thompson v. Steele*, 709 F.2d 381, 383 n.3 (5th Cir. 1983). The burden is on the inmate to show the post-deprivation remedy is inadequate. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Plaintiff testified he has not filed suit in state court pursuant to § 501.007 or for conversion with respect to his lost and confiscated personal property. Because Plaintiff has not pursued property claims in state court, he cannot allege that the post-deprivation remedy available to him is inadequate. As such, Plaintiff's allegations regarding the loss and/or confiscation of his personal property fail to state a cognizable constitutional claim.

14 / 22

It is respectfully recommended, therefore, that these due process claims be dismissed as frivolous and/or for failure to state a claim for relief.

### D.    Retaliation

Plaintiff claims Defendants Sifuentes and Wolfrum engaged in harassment and retaliatory acts against him. Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686. Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v.*

*Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166).   In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights.   *Morris*, 449 F.3d at 686.   Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.   *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."   *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)).   An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).   "Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim."   *Jones*, 188 F.3d at 325.   The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.*   In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred.   *Woods*, 60 F.3d at 1166.

Plaintiff claims Defendants Sifuentes and Wolfrum harassed and retaliated against him as follows upon his arrival at the McConnell Unit: (1) both defendants warned Plaintiff on his first day that his conduct in other units would not fly at the McConnell Unit; (2) Defendant Sifuentes was responsible for Plaintiff receiving his mail late and for his legal mail not reaching its intended destination; and (3) Defendant Sifuentes caused

16 / 22

Plaintiff's UCC custody classification to be delayed a week based on an disciplinary case that Plaintiff never received.

Plaintiff first alleges he was subjected to retaliatory harassment when Defendants Sifientes and Wolfrum issued their initial warnings to Plaintiff. Taken alone, such alleged verbal harassment by these two defendants is considered *de minimis* and does not state a constitutional violation. *See Garner v. Moore*, No. C-11-169, 2012 WL 1098271, at *9 (S.D. Tex. Mar. 8, 2012) ("Only where officials actually undertake positive action for retaliatory purposes do such adverse actions amount to actionable retaliation.").

Furthermore, to prevail on a retaliation claim, Plaintiff must demonstrate he suffered an adverse act that "would chill or silence a person of ordinary firmness" from complaining in the future. *Morris*, 449 F.3d at 685-86. Plaintiff's allegations indicate he filed over twenty grievances with respect to Defendants' conduct, some of which were filed at the McConnell Unit. Thus, it is clear the verbal warnings from Defendants Sifuentes and Wolfrum had no chilling effect on Plaintiff's ability to complain and file grievances. Accordingly, the undersigned respectfully recommends Plaintiff's allegations regarding these verbal warnings be dismissed with prejudice as frivolous and/or for failure to state a claim.

Plaintiff next complains Defendant Sifuentes retaliated against him on the basis that he began to receive his personal mail late and that his legal mail sometimes failed to reach its intended destination. Plaintiff allegations suggest Defendant Sifuentes was personally responsible for Plaintiff's mail issues.

Plaintiff primarily relies on his personal belief that Defendant Sifuentes caused him to suffer delays with receiving personal the mail and not on specific facts setting forth a chronological series of events where retaliation can be inferred.  While indicating he had filed many grievances, Plaintiff fails to offer any facts to suggest Defendant Sifuentes acted in retaliation to any one of the grievances filed.  *See Ybarra v. Hurley*, No. 9:09cv212, 2010 WL 2432376, at *4 (E.D. Tex. May 13, 2010) (finding that prisoner had offered no facts "beyond the simple fact that he filed a grievance in July of 2009 and then experienced an adverse event in October of 2009 as proof that the two situations were related).   Accordingly, the undersigned respectfully recommends Plaintiff's allegations regarding Defendant Sifuentes' responsibility for his mail problems be dismissed with prejudice as frivolous and/or for failure to state a claim.

Lastly, Plaintiff complains Defendant Sifuentes caused Plaintiff's UCC custody classification meeting to be delayed a week based on a disciplinary case Plaintiff never received.  Taken as true, however, Plaintiff has failed to allege he suffered an adverse act in connection with Defendant Sifuentes's conduct.  While the UCC meeting was delayed one week, Plaintiff ultimately received the favorable decision he was seeking, which was a more favorable line classification.   Because the one-week delay is considered *de minimis*, Plaintiff has failed to state a constitutional violation.  *See Morris*, 449 F.3d at 686.   Accordingly, the undersigned respectfully recommends Plaintiff's allegations regarding the delay in holding the UCC Classification meeting be dismissed with prejudice as frivolous and/or for failure to state a claim.

18 / 22

D.     **Mail**

Plaintiff claims his constitutional rights were violated through long delays in receiving personal mail.  The Fifth Circuit has long held that inmates do not possess a right to the unrestricted freedom of receipt and transmission of mail.  *Adams v. Ellis*, 197 F.2d 483, 485 (5th Cir. 1952).  Further, a prison official's failure to follow the prison's mail policies or procedures does not, by itself, result in a constitutional violation.  *See Myers v. Klevenhagen*, 97 F.3d 91, 95 (5th Cir. 1996).  Rather, Plaintiff must show he suffered a constitutional harm as a result of being deprived of his mail. *See Brewster v. Dretke*, 587 F.3d 864, 769 (5th Cir. 2009).  Plaintiff alleges his personal mail had been delayed by several weeks or in some cases indefinitely.  Plaintiff, however, fails to allege any facts to indicate he has suffered any constitutional harm as a result of delays in receiving his personal mail.

Plaintiff further complains his legal mail sometimes fails to reach its destination. Prisoners have a constitutionally protected right of access to the courts.  *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356.

Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts. *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313,

317 (5th Cir. 1999).  Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts.  *Lewis*, 518 U.S. at 349.

To meet the standing requirement, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him."  *Id.* at 819.  In particular, to succeed on a claim of denial of access to courts, a plaintiff must show he lost an actionable or nonfrivolous claim or was prevented from presenting such a claim because of the alleged denial.  *See Lewis*, 518 U.S. at 356.  He must show "that his position as a litigant was prejudiced" as a direct result of the denial of access.  *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

Plaintiff only complains that his sister has not received some of his legal mail as it relates to his divorce proceeding. Plaintiff testified, however, he has no other civil rights or habeas cases pending in any court other than this proceeding.  Thus, Plaintiff has alleged nothing to suggest his ability to present an actionable or nonfrivolous claim in challenging either his conviction or conditions of confinement has been hampered.  *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement).  He otherwise fails to allege he has been prejudiced or suffered actual injury in connection with his divorce proceeding.  Accordingly, the undersigned

recommends Plaintiff's claims regarding his mail be dismissed with prejudice as frivolous or for failure to state a claim.

## V.     RECOMMENDATION

Because Plaintiff has failed to state a cognizable constitutional claim in this action against Defendants, it is respectfully recommended that Plaintiff's complaint be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  It is respectfully recommended further that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

Respectfully submitted this 12th day of August 2019.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).